UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PAUL VERHOEVEN                              CIVIL ACTION

VERSUS                                      NO. 06-4891

BALBOA INSURANCE COMPANY                    SECTION B(1)
BALBOA LLOYD'S INSURANCE COMPANY
MERITPLAN INSURANCE COMPANY
AND DEPARTMENT OF HOMELAND
SECURITY, FEMA


ORDER AND REASONS

Before the Court is Defendants' Balboa Insurance Company, Balboa Lloyd's Insurance Company, Meritplan Insurance Company, and Newport Insurance Company's Joint Motion to Dismiss For Lack of Subject Matter Jurisdiction (Rec. Doc. No. 34) and Defendant Countrywide Home Loans, Inc.'s Motion to Dismiss for Failure to State a Claim and Joinder in Insurance Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Rec. Doc. No. 36). After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Defendants' Balboa Insurance Company, Balboa Lloyd's Insurance Company, Meritplan Insurance Company, and Newport Insurance Company's Joint Motion to Dismiss For Lack of Subject Matter Jurisdiction is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Countrywide Home Loans, Inc.'s Motion to Dismiss for Failure to State a Claim and Joinder

1

in Insurance Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff is **GRANTED** leave to amend his Complaint in accordance with the Court's ruling herein.

### *BACKGROUND*

On or about October 9, 1999, Defendant Newport Insurance Company ("Newport") issued an insurance policy to Countrywide Home Loans, Inc. ("Countrywide"). This policy provided fire and wind coverage for properties that were collateral for loans made by Countrywide.

On July 1, 2004, Defendant Meritplan Insurance Company ("Meritplan") issued an insurance policy to Countrywide. This policy provided flood coverage for properties that were collateral for loans made by Countrywide.

At the time Hurricane Katrina struck in August 2005, Defendant Countrywide held a mortgage interest in Plaintiff's home at 5855 Catina Street, New Orleans, Louisiana. On or about August 21, 2005, Countrywide informed Plaintiff that it did not have information indicating that Plaintiff had hazard insurance on the property. Thus, pursuant to the mortgage agreement between Countrywide and Plaintiff, Countrywide informed Plaintiff that it would be purchasing hazard insurance on the property up to the value of the loan and that Plaintiff would be responsible for paying the premiums on the insurance. Countrywide's interest in

2

Plaintiff's home was covered under the fire and wind policy issued by Newport which was described above.  Additionally, Countrywide's interest in Plaintiff's home was also covered under the flood policy issued by Meritplan described above.

As a result of Hurricane Katrina, Plaintiff's residence allegedly sustained substantial damage from flooding and wind. Plaintiff filed suit on August 28, 2006 and named as Defendants Balboa Insurance Company, Balboa Lloyd's Insurance Company, Meritplan Insurance Company, and the Department of Homeland Security.[1]  Plaintiff alleged that there existed an insurance policy issued by one of these four named Defendants which covered Plaintiff's home.  Plaintiff alleged that he had notified these named Defendants of the damage to the property.  He then received purported compensation from Defendants that was inadequate. Plaintiff alleged that he was entitled to damages as a result of a breach of contract on the part of the named Defendants.  These damages included full payment for the covered loss under the policies, damages for mental anguish, inconvenience, and distress, penalties pursuant to La. R.S. 22:1220 and 22:658, and attorney's fees.

Based on Defendants' answers to his Original Complaint, Plaintiff subsequently amended his Complaint to add Newport

---

[1]The Court subsequently dismissed the claims against the Department of Homeland Security (Rec. Doc. No. 17).

Insurance Company and Countrywide Home Loans, Inc. as Defendants. In his Amended Complaint, Plaintiff alleged that Countrywide was Plaintiff's mortgage lender for the property and that Countrywide purchased insurance from Meritplan and Newport Insurance Companies. Plaintiff alleged that he had been billed and charged for the premiums for the insurance coverage obtained by Countrywide through Newport and Meritplan. Additionally, Plaintiff alleged that he and/or Countrywide had not been adequately compensated despite satisfactory proof of loss. Plaintiff, in his Amended Complaint, did not state any new claims but instead referenced all of the allegations found in the Original Complaint and asserted them against Newport and Countrywide.

On or about August 27, 2007, Defendants Balboa, Balboa Lloyd's, Meritplan, and Newport filed a joint Motion to Dismiss for Lack of Subject Matter Jurisdiction (Rec. Doc. No. 34). At the same time, Defendant Countrywide also filed a Motion to Dismiss for Failure to State a Claim (Rec. Doc. No. 36). In this Motion, Defendant Countrywide also joined the other Defendants in their Motion to Dismiss. Through these motions as well as a joint corporate disclosure filed by the Defendants on September 18, 2007 (Rec. Doc. No. 43), Plaintiff alleges that he first learned that all of the Defendant insurance companies as well as Countrywide were wholly-owned subsidiaries of Countrywide Financial Corporation. Plaintiff filed an Opposition to Defendants' Motion

4

to Dismiss on September 25, 2007 (Rec. Doc. No. 44) in which he asserted additional claims against Defendants Newport, Meritplan, and Countrywide.

Defendants Balboa and Balboa Lloyd's both argue that neither issued wind or flood policies to Countrywide or Plaintiff. Thus, neither Defendant had a contractual or other relationship with Plaintiff upon which a duty could be imposed on them. Defendants Newport and Meritplan argue that Plaintiff has no standing to bring a claim for benefits under either policy because Plaintiff was not a named insured or an additional insured under these policies. Additionally, they allege that Plaintiff was not a third party beneficiary of the contracts between Meritplan/Newport and Countrywide. Defendant Countrywide argues that because Plaintiff's claims in his Original and Amended Complaints are based entirely on a breach of an insurance contract by an insurer, Countrywide is not liable to Plaintiff because Countrywide was an insured under lender-based policies.

Plaintiff Respondent contends that Countrywide, Meritplan, and Newport are all subsidiaries of Countrywide Financial Corporation. Thus, Plaintiff argues that he should be granted leave to amend his Complaint to add additional claims against Countrywide, Meritplan, and Newport. Plaintiff contends that he detrimentally relied on Countrywide's representation that it obtained insurance to cover its mortgage on Plaintiff's property. Additionally, Plaintiff

claims that Countrywide's failure to pursue a claim under the insurance policies constitutes bad faith under the mortgage contract between Countrywide and Plaintiff.   Finally, Plaintiff argues that he should be granted leave to allege the single business enterprise theory, which would allow him to treat Newport, Meritplan, and Countrywide as one entity and assert these claims against all three Defendants.

### *DISCUSSION*

**A.   Motion to Dismiss Standard**

Defendant Countrywide moves to dismiss Plaintiff's suit for failure to state a claim pursuant to Rule 12(b)(6).  In considering a Rule 12(b)(6) motion to dismiss, courts have found that dismissal pursuant to this provision "is viewed with disfavor and is rarely granted."  *Lowery v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997); *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).  The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the original complaint must be taken as true.  *Oliver v. Scott,* 276 F.3d 736, 740 (5th Cir. 2002); *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986).  Until recently, the standard for a motion to dismiss was often phrased in such a way that a district court could not dismiss a complaint under Fed. R. Civ. Pro. 12(b)(6) "unless it appear[ed] beyond doubt that the plaintiff [could] prove no set of facts in support of his

claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Blackburn v. Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  The Supreme Court, however, recently noted that the phrase "no set of facts" "is best forgotten as an incomplete, negative gloss on an accepted pleading standard..." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007).  The Court went on to note that the standard, in reality, remains the same, that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*.  The Fifth Circuit defines this strict standard as, "whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Lowrey*, 117 F.3d at 247, citing 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, §1357, at 601 (1969).  "In other words, a motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Ramming v. United States*, 281 F.3d 158, 161-62 (5th Cir. 2001).

The remaining Defendants, Balboa, Balboa Lloyd's, Meritplan, and Newport, move to dismiss Plaintiff's suit for lack of subject matter jurisdiction pursuant to Fed. R. Civ. Pro. 12(b)(1) on the grounds that Plaintiff was not an insured under the policy.  This claim of a lack of subject matter jurisdiction is essentially a challenge to the existence of a cause of action on the part of the

Plaintiff.  Thus, the Court will treat this Rule 12(b)(1) motion under the same standard as Defendant Countrywide's Rule 12(b)(6) Motion to Dismiss.  *See Montez v. Dep't of the Navy*, 392 F.3d 147, 150 (5th Cir. 2004) ("In circumstances where 'the defendant's challenge to the court's jurisdiction is also a challenge to the exercise of a...cause of action, the proper course of action for the district court...is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case' under either Rule 12(b)(6) or Rule 56.")(quoting *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981).

**B.   Claims Asserted Against Defendants Balboa and Balboa Lloyd's in Plaintiff's Original and Amended Complaints**

Defendants Balboa and Balboa Lloyd's both argue that neither issued wind or flood policies to Countrywide or Plaintiff.  Thus, neither Defendant had a contractual or other relationship with Plaintiff upon which a duty could be imposed on them.  Plaintiff states in his Original Complaint that "there existed a policy of Homeowner's insurance on the covered property written by either Defendant BALBOA INSURANCE COMPANY or BALBOA LLOYD'S INSURANCE COMPANY or MERITPLAN INSURANCE COMPANY..."  Although Plaintiff named Balboa and Balboa Lloyd's in his Original Complaint as possible insurers, he did not address any claims against these two Defendants in his Opposition to the Motion to Dismiss.  Nor did Plaintiff dispute the Defendants' contentions that neither Balboa

8

nor Balboa Lloyd's issued policies to the Plaintiff or Countrywide. Finding that neither Balboa nor Balboa Lloyd's issued policies to Countrywide or Plaintiff, the Court grants Defendants' Motion to Dismiss as to all claims in Plaintiff's Original and Amended Complaints against Balboa and Balboa Lloyd's.

**C.  Claims Asserted Against Defendants Meritplan and Newport in Plaintiff's Original and Amended Complaints**

Unlike Defendants Balboa and Balboa Lloyd's, Defendants Newport and Meritplan did issue insurance policies related to the present case.  Defendants Newport and Meritplan, however, argue that Plaintiff has no standing to bring a claim for benefits under either policy because Plaintiff was not a named insured or an additional insured under these policies.  Additionally, they allege that Plaintiff was not a third party beneficiary of the contracts between Meritplan/Newport and Countrywide.

In order to determine whether Plaintiff has standing to sue under the insurance contracts, the Court must analyze the language of the contracts themselves.  If an insurance policy is clear and unambiguous, it will be enforced as written.  *Louisiana Ins. Guar. Ass. v. Champion Ins. Co.*, 630 So. 2d 759, 764 (La. 1994).  The Newport policy lists Countrywide Home Loans as the "Named Insured" of the policy.  Nowhere in the policy is any other party listed as an insured.  The Court finds that the policy is clear as written and that Plaintiff was not a named insured under the Newport

9

Policy.

Like the Newport policy, the Meritplan policy lists Countrywide Home Loans as the "Named Insured" under the policy. Additionally, however, it states that "[t]he BORROWER shall be considered an additional insured with respect to any residual amounts of insurance over and above YOUR [Countrywide's] insurable interest." Thus, under the clear terms of the contract, Countrywide was the named insured, and Meritplan was only obligated to indemnify Plaintiff borrower if the covered loss was greater than Countrywide's insurable interest in the property, subject to the $250,000 policy limit. In this case, the Plaintiff's loan balance is $303,555.61, which is greater than the policy limit. Thus, there is no residual amounts of insurance that could exceed Countrywide's insurable interest. Under the clear language of the contract, Plaintiff was not a named or additional insured under the Newport policy.

The Court will now analyze whether the Plaintiff should be treated as a third party beneficiary of the contracts between Meritplan/Newport and Countrywide. Under Louisiana law, there are three factors for determining whether a contract provides benefits to a third party: (1) The stipulation for a third party must be manifestly clear; (2) There must be certainty as to the benefit owed the third party; and (3) The benefit must not be a mere incident of the contract between the promisor and the promisee.

10

*Joseph v. Hosp. Serv. Dist. No. 2 of the Parish of St. Mary*, 939 So. 2d 1206, 1212 (La. 2006). Defendants claim that there is no clear intention in either policy to benefit Plaintiff. Additionally, any benefit conferred on Plaintiff was a mere incident of the contracts between Meritplan/Newport and Countrywide.

The facts of *Harrison v. Safeco Ins. Co.* are similar to those in the present case. 2007 WL 1244268 (E.D. La. 2007). In *Harrison*, the defendant mortgage company purchased insurance when plaintiffs failed to provide evidence of coverage, and the plaintiffs contended that they were third party beneficiaries of the lender-placed polices. *Id*. at *1-2. The court rejected the plaintiffs' argument finding that there was no clear intention in the policies to benefit the plaintiffs. *Id*. at *5. The Court noted that although the policy referenced the "borrower," it nowhere named plaintiffs as third party beneficiaries. *Id*. There was no manifestation in the policy of an intent to benefit the plaintiffs. *Id*.

The borrower plaintiff in *Graphia v. Balboa Ins. Co.* also argued that she was a third party beneficiary of a lender-based policy. 2007 WL 2903250 (E.D. La. 2007). The policy in that case, like the Meritplan policy in the present case, stated that plaintiff was considered an additional insured with respect to additional amounts over and above the mortgage company's insurable

11

interest.  *Id*. at *3.  The court rejected the plaintiff's third party beneficiary claim finding that the contract "evidenced no intent to give plaintiff personal rights in the insurance coverage for losses that do not exceed the mortgagee's insurable interest." *Id*. at *4.

The Court in the present case is persuaded by the reasoning in *Safeco* and *Graphia*.  Here, an August 14, 2005 correspondence between Countrywide and Plaintiff regarding hazard insurance requirements, which was attached as an exhibit to Plaintiff's Opposition, clearly states that the coverage "will be purchased to protect Countrywide's interest in [the] property" and that it will not protect "any equity that [Plaintiff] may have built up on [his] property."  Additionally, the Meritplan policy states that Plaintiff is only a beneficiary if the loss exceeds the amount of the mortgage.  The Plaintiff is not named as a third party beneficiary in either policy, and nowhere is there a clear expression of an intent to benefit Plaintiff.  Finally, the fact that the Plaintiff was responsible for reimbursing Countrywide for the premiums does not automatically make him a third party beneficiary under the policy. *See Kilson v. Am. Road Ins. Co.*, 345 So. 2d 967, 969 (La. App. 1977)(holding that although lienholder charged borrower for insurance premiums paid by lienholder, this fact did not make borrower a third party beneficiary of the contract between lienholder and insurance company).

Plaintiff acknowledges that the caselaw supports Defendants' argument that Plaintiff is not a third party beneficiary of the insurance contracts.  Plaintiff indicates, however, that he should be able to proceed against Meritplan and Newport because of the fact that they are allegedly allied with Countrywide in an effort to defeat a claim for payment under the policies.  Plaintiff, however, cites no caselaw to support the contention that this relationship between the contracting parties qualifies him as a third party beneficiary of their contracts.  Thus, while the Court will address the Defendants' corporate relationship below with regard to Plaintiff's additional claims, the Court finds that this relationship does not have any significance with regard to his standing as a party to the insurance contracts between Meritplan/Newport and Countrywide.  Accordingly, the Court finds that Plaintiff was not a third party beneficiary of either the Newport or Meritplan policies.

Because Plaintiff was not a named beneficiary or a third party beneficiary under either the Newport or Meritplan insurance contracts, the Court grants Defendants Meritplan and Newport's Motion to Dismiss with regard to Plaintiff's claims in his Original and Amended Complaints for breach of contract as well as for penalties and fees pursuant to La. R.S. 22:1220 and 22:658. Additionally, because Plaintiff is not a covered beneficiary under either policy, the Court also dismisses the Plaintiff's claims in

his Original and Amended Complaints for mental anguish, inconvenience, and distress related to those polices.

**D.   Claims Asserted Against Defendant Countrywide in Plaintiff's Original and Amended Complaints**

Defendant Countrywide argues that Plaintiff's claims in his Original and Amended Complaints are based entirely on a breach of an insurance contract by an insurer.  Under the clear terms of both the Newport and Meritplan policies, however, Countrywide never issued any insurance policy to the Plaintiff but was instead an insured under both policies.   Nowhere in his Opposition does Plaintiff dispute Countrywide's status as the insured rather than the insurer. Thus, the Court finds that the breach of insurance contract claims asserted by the Plaintiff in his Original and Amended Complaints against Countrywide are dismissed.  The Court also dismisses the claims against Countrywide in his Original and Amended Complaints for penalties and fees pursuant to La. R.S. 22:1220 and 22:658, mental anguish, inconvenience, and distress related to the insurance policies.

**E.   Additional Claims Asserted in Plaintiff's Opposition Memorandum Against Defendants Countrywide, Meritplan and Newport.**

Plaintiff in his Opposition to Defendants' Motion to Dismiss does not argue in support of the breach of contract claims stated in his Original and Amended Complaints.   Instead, Plaintiff

stresses that Countrywide, Meritplan, and Newport are all subsidiaries of Countrywide Financial Corporation. Relying on this fact, Plaintiff lists a number of novel claims against these Defendants. First, Plaintiff argues that he detrimentally relied on Countrywide's representation that it obtained insurance to cover its mortgage on Plaintiff's property. Additionally, Plaintiff claims that Countrywide's failure to pursue a claim under the insurance policies constitutes bad faith under the mortgage contract between Countrywide and Plaintiff. Finally, Plaintiff argues that he should be granted leave to allege the single business enterprise theory, which would allow him to treat Newport, Meritplan, and Countrywide as one entity and assert these claims against all three Defendants.

Plaintiff requests that this Court grant leave to amend his Complaint to add these claims against Defendants Newport, Meritplan, and Countrywide. Defendant argues that a complaint may not be amended by the plaintiff's briefs in opposition to a motion to dismiss. The Court notes that in support of Defendant's contention, the Fifth Circuit has stated that upon appellate review, a Plaintiff is bound by the facts alleged in his pleadings and cannot alter these facts in his briefs to the appellate court. *See Burch v. City of Nacogdoches*, 174 F.3d 615 (5th Cir. 1999). The Fifth Circuit, however, has also held that a revised theory set forth in a plaintiff's memorandum in opposition to a motion to

dismiss may be construed by the district court as a motion to amend the pleadings.  *See Sherman v. Hallbauer*, 455 F.2d 1236, 1242 (5th Cir. 1972).  Thus, although in the present case, the Plaintiff has not styled his request to amend as a formal motion, the Court will nevertheless treat the allegations in Plaintiff's Opposition as a motion to amend.

Motions to amend pleadings are governed by Fed. R. Civ. Pro. 15 which states that the court may permit amendment of pleadings when justice requires.  In exercising its discretion under Rule 15, the Court may consider such factors as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure the deficiencies by amendments previously allowed, undue prejudice to the opposing party, and the futility of the amendment.  *Bakner v. Xerox Corp. Employee Stock Ownership Plan*, 2000 WL 33348191, *14 (W.D. Tex. 2000).

In this case, however, in addition to moving to amend after responsive pleadings have been served, Plaintiff is also attempting to amend his Complaint after the July 5, 2007 deadline set forth in the Court's Scheduling Order.  *See* Rec. Doc. No. 25.  Such requests are governed by Fed R. Civ. Pro. 16(b) which states that the scheduling order shall not be modified except upon a showing of good cause.  When considering a request to amend after the scheduling order deadline, the Fifth Circuit has held that only upon a movant's demonstration of good cause to modify the

16

scheduling order under Rule 16 will the more liberal standard of Rule 15 apply. *S&W Enter., L.L.C. v. Southtrust Bank of Alabama*, 315 F.3d 533, 535-36 (5th Cir. 2003). Additionally, while absence of prejudice is relevant to a Rule 15 analysis, the absence of prejudice to the nonmoving party does not constitute good cause under Rule 16. *Porter v. Milliken & Michaels, Inc.*, 2001 WL 378687, *1 (E.D. La. 2001). In order to satisfy Rule 16, the moving party must show that despite his diligence, he could not have reasonably met the scheduling deadline. *Howell v. Standard Motor Prod., Inc.*, 2001 WL 196969, *1 (N.D. Tex. 2001). Thus, the Court will first analyze the Plaintiff's request under the good cause standard of Rule 16 and then under the more liberal Rule 15 standard.

With regard to Rule 16, Defendant argues that Plaintiff has failed to explain or show good cause for his late request for leave to amend. Specifically, Defendant argues that Plaintiff's new claims are based on facts that he has known since the inception of the lawsuit. Plaintiff claims, however, that the delay was caused by the fact that he did not learn until after the scheduling order deadline that Defendants were all under the same corporate umbrella.

A review of the Complaint in this case reveals that Plaintiff did not know of the corporate relationship among the Defendants when he filed suit. Plaintiff did not even name Countrywide as a

Defendant in his Original Complaint.  Additionally, although Plaintiff amended his Complaint in January 2007 to add Countrywide as a Defendant/Involuntary Plaintiff, the basis was that as the insured under the policies, Countrywide should exercise its rights under those policies.  There is no evidence that at that time, Plaintiff knew of the relationship between Countrywide, Newport, and Meritplan.  It was not until the corporate disclosure and the joint motions to dismiss filed in September 2007 that Plaintiff discovered this relationship.  There is no evidence in the record that Plaintiff's failure to discern the relationship of the Defendants before this time was a result of a lack of diligence on his part.

The timing of Plaintiff's request in relation to when he discovered the relationship amongst the Defendants is further evidence that he has satisfied Rule 16.  In *Howell v. Standard Motor Prod., Inc.*, the court found that a request to amend made more than four months after the Plaintiff learned of the facts which were the basis of the amendment was too late to satisfy the requirements of Rule 16.  2001 WL 196969, *2 (N.D. Tex. 2001). Here, on the other hand, the Plaintiff filed his request to amend on September 25, 2007, several days after the corporate disclosure was filed on September 18, 2007.  As soon as Plaintiff learned of the corporate structure through the discovery process, he moved to amend his Complaint.  This action does not show a lack of diligence

on Plaintiff's part.  In sum, the Court finds that Plaintiff has satisfied the diligence requirements of Rule 16 to amend his Complaint after the scheduling order deadline.

The Court must now analyze Plaintiff's claim under Rule 15. As stated above, when deciding a Rule 15 request, the Court may consider such factors as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure the deficiencies by amendments previously allowed, undue prejudice to the opposing party, and the futility of the amendment. *Bakner*, 2000 WL 33348191 at *14. The Fifth Circuit has stated that Rule 15 evinces a bias in favor of granting leave to amend.   *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597-98 (5th Cir. 1981).  The policy of  the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading.  *Id*.

In the present case, the Plaintiff filed his request to amend more than six months before trial, which is currently set for April 14, 2008.  The Court finds that the timing of this request will not cause undue delay.  The Court notes that there has not been a repeated failure on the part of the Plaintiff in curing the pleading deficiencies.  The Plaintiff has once altered his Complaint due to new facts and seeks to do the same here. Additionally, the Court finds a lack of bad faith on the

Plaintiff's part.  As noted earlier, the request is due instead to the fact that Plaintiff was not initially aware of the relationship of the Defendants.  With regard to undue prejudice, Defendant argues that defending these additional claims would cause Defendants an additional expenditure of time and money.  The Court, however, notes that because of the corporate structure of the Defendants, Countrywide should have been aware of Plaintiff's original claims regarding the insurance contracts.  *See Dussouy*, 660 F.2d at 599 (allowing amendment when Defendant was given adequate notice of the transactions at issue).  Thus, while the novel claims will likely require additional discovery, the Court finds that they will not unduly prejudice the Defendants.

Finally, The Court must analyze whether the proposed amendments described in Plaintiff's Opposition would be futile. The Fifth Circuit has interpreted futility to mean that the plaintiff's amended complaint would fail to state a claim upon which relief could be granted.  *J.R. Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000).  The requesting party must set forth with particularity the grounds for the amendment and the relief sought.  *See United States ex. rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 387 (5th Cir. 2003)("'[A] bare request in an opposition to a motion to dismiss - without any indication of the particular grounds on which an amendment is sought,...does not constitute a motion within the contemplation of

20

Rule 15(a)" (quoting *Confederate Mem'l Ass'n Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993)). Sweeping assertions alone are insufficient. *Breshears v. River Marine Contractors, Inc.*, 1993 WL 43630, *1 (E.D. La. 1993). The plaintiff must articulate legal theories which are supported by alleged facts. *Id*.

**1. Detrimental Reliance**

Plaintiff argues first that he detrimentally relied on Countrywide's representation that it obtained insurance to cover its mortgage on Plaintiff's property. According to the Louisiana Civil Code, "A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying." La. Civ. Code Art. 1967. Plaintiff must allege three elements to state a claim for detrimental reliance: (1) a representation by conduct or word; (2) justifiable reliance thereon; and (3) a change of position to one's detriment because of the reliance." *Drs. Bethea v. St. Paul Guardian Ins. Co.*, 2002 WL 31697714, *3 (E.D. La. 2002).

With regard to a representation, Plaintiff contends that Countrywide made a representation that insurance had been purchased at Plaintiff's expense. Implicit in this purchase of the insurance was the representation that if a loss occurred, Countrywide would pursue a claim. Countywide contends that it expressly informed Plaintiff that the insurance was not being purchased on Plaintiff's

behalf but strictly to cover Countrywide's interest in the
property.  Thus, Countrywide made no representation regarding the
insurance to support a claim for detrimental reliance.

The Court finds that despite Defendant's disclaimer regarding
the insurance, the fact remains that Countrywide purchased
insurance on the property to cover the loan it made to Plaintiff.
Additionally, it informed Plaintiff that he would be responsible
for paying the premiums for this insurance.  These actions amount
to a representation that if the property was damaged, Countrywide,
as an insured, would properly pursue a claim against the insurance
company for any loss it sustained.

With regard to reasonable reliance, the Defendant argues that
Plaintiff's reliance could not have been reasonable.  Defendant
contends that the only reason Countrywide purchased insurance in
the first place was because Plaintiff breached his contract with
Countrywide by failing to maintain his own insurance on the
property.  Additionally, Countrywide claims that it clearly
informed Plaintiff that the insurance was meant to protect
Countrywide's interest and not his own.

The Court notes, however, that the August 14, 2005
correspondence between Countrywide and Plaintiff regarding hazard
insurance requirements does not state that the Plaintiff is in
breach if he does not maintain insurance.  It simply informs
Plaintiff that Defendant has the right to purchase insurance at

Plaintiff's expense if Plaintiff does not maintain it.  Thus, the Court finds that just because Plaintiff did not maintain insurance does not make his reliance on Defendant's representations unreasonable.  Additionally, even though Countywide stated that the insurance protected its interest and not Plaintiff's, Plaintiff was still charged the premiums.  Most importantly, Plaintiff still relied on the fact that, in the event of loss, Countrywide would adequately pursue a damage claim and, therefore, reduce the amount Plaintiff owed under the mortgage.  In sum, the Court finds that Plaintiff has alleged sufficient facts to establish reasonable reliance on Defendant's representation.

Finally, with regard to detriment, the Court notes that there is currently conflicting allegations regarding what has been paid under the insurance contracts between Meritplan/Newport and Countrywide.  Plaintiff states in his Opposition that "no claim was made by Countrywide and Countrywide['s] involvement, if any, was solely the result of pressure by plaintiff and the filing of this lawsuit."  Additionally, Plaintiff states that Countrywide "has refused to properly pursue payment for the damages to plaintiff's property."  Finally, Plaintiff states that "Countrywide has not pursued a claim under either policy it procured, especially the Newport Insurance Company policy."  While these allegations seem to indicate that Countrywide has not sought any compensation under either policy, Plaintiff also acknowledges that "Newport Insurance

Company has paid $13,111.07 for wind damage to plaintiff's property." Additionally, Plaintiff acknowledges that "Meritplan has agreed to pay $187,559.08" but that this amount was "substantially less prior to plaintiff's bringing of this suit." These statements indicate that while some money has been paid and that Meritplan "has agreed" to pay additional sums, Plaintiff is alleging that Countrywide has still not adequately pursued claims under the policies.

Given the allegations, further discovery is likely necessary to determine the exact status of these claims. The Court finds, however, that there are at least sufficient facts to allege detriment. In addition to the allegations that Countrywide has not properly pursued the claims, the Court is persuaded by the Claims File which Plaintiff submitted along with his Opposition and which he alleges was provided jointly by Defendants Newport and Meritplan. This document evidences that $13,111.07 is the "recommended adjustment" under the policy. It also states, however: "We have made several attempts to contact Insured and have driven back to the Risk on two occasions. We have left our business card and have not heard from Insured...Since we could not gain entry we do not know how much damage there is in the risk." Countrywide is the insured under the policy referenced in this document. This Claims File indicates that there is possibly more covered loss but that Countrywide, as the insured, has not sought

24

full recovery for this loss.  The Court views this as a lack of effort on the part of Countrywide to pursue the claim.  Thus, while there is a question as to what extent payment has been made, the Court is persuaded that the Plaintiff in his Opposition has at least alleged facts sufficient to establish detriment on his part. That is, Plaintiff paid the premiums for the insurance purchased by Countrywide, and there are sufficient allegations that Countrywide, in turn, has not properly pursued the claims covered by those premiums.

**2.   Bad Faith**

Second, Plaintiff alleges that he should be granted leave to amend his Complaint to add a claim for breach of the duty of good faith and fair dealing regarding Countrywide's exercise of its right to purchase insurance under the mortgage contract.  The Louisiana Civil Code provides that good faith shall govern the conduct of the obligor and of the obligee in whatever pertains to the obligation.  La. Civ. Code Art. 1759.  In order to state a cause of action for breach of a duty of good faith and fair dealing, the plaintiff must allege that the defendant's actions were prompted by fraud, ill will, or sinister motivation. *Spillway Inv., L.L.C. v. Pilot Travel Ctrs. LLC,* 2005 WL 517498, *8 (E.D. La. 2005).

Plaintiff, in his Opposition, alleges that Countrywide charged Plaintiff for premiums used to purchase insurance through a

subsidiary for the sole purpose of increasing its parent company's and subsidiary's bottom line.  Defendant, on the other hand, claims that under the mortgage contract, it had a right but not a duty to purchase insurance and that it, therefore, owed no contractual duty relating to the insurance.  The Court finds that while Defendant is correct that it had the right but not the obligation to purchase insurance, Defendant nevertheless exercised that right and charged Plaintiff for the premiums.  The doctrine of good faith applies to all conduct which pertains to contractual obligations.  Thus, upon exercising its right, Countrywide had a duty to do so in good faith.  If Countrywide did in fact charge Plaintiff for premiums for the sole purpose of its financial advancement, such action would constitute bad faith under the mortgage contract.  Thus, the Court finds that Plaintiff has alleged sufficient facts to state a claim for breach of good faith on Countrywide's part.

### 3.   Single Business Enterprise Theory

Finally, Plaintiff alleges that he should be permitted to amend his Complaint to allege single business enterprise theory in order to assert all claims against Defendants Countrywide, Newport, and Meritplan.  Under Louisiana law, "upon a finding that a group of affiliated corporations constitute a single business enterprise, the court may disregard the concept of corporate separateness and extend liability to each of the affiliated corporations to prevent fraud or achieve equity.  *See S. Capitol Enter., Inc. v. Conseco*

*Serv., L.L.C.*, 476 F. Supp. 2d 589, 595 (M.D. La. 2007)(quoting *Brown v. Auto. Cas. Ins. Co.*, 644 So. 2d 723, 727 (La. App. 1 Cir. 1994). Whether a group of entities is a single business enterprise is a question of fact. *Id*. Among the factors considered in determining whether a group of entities constitute a single business enterprise are substantial identity of ownership, common directors, officers, or employees, centralized accounting, and unified administrative control of corporations whose business functions are similar or supplementary. *Green v. Champion Ins. Co.*, 577 So. 2d 249, 257 (La. App. 1 Cir. 1991).

Here, Plaintiff has alleged that Newport, Meritplan, and Countywide are all wholly-owned subsidiaries of Countrywide Financial Corporation and that all three share the same counsel. Additionally, Plaintiff has alleged that Newport and Meritplan share the same vice-president of claims and, at least in this case, have presented information in a joint claims file. Finally, the facts indicate that Newport and Meritplan are both insurance companies whose businesses supplement Countywide by providing insurance to cover Countywide's loans. The Court finds that these facts are at least sufficient to state a claim under the single business enterprise theory.

In sum, the Court finds that Plaintiff has alleged with sufficient particularity the grounds for amendment and relief sought. Plaintiff has alleged sufficient facts to allege

detrimental reliance as well as a breach of good faith and fair dealings against Countrywide.  Additionally, the Court finds that Plaintiff has alleged sufficient facts to state a claim against Newport, Meritplan, and Countrywide under the single business enterprise theory.  Thus, the claims would not be futile under Rule 15, and Plaintiff is granted leave to amend his Complaint to allege these claims.

Accordingly,

**IT IS ORDERED** that Defendants' Balboa Insurance Company, Balboa Lloyd's Insurance Company, Meritplan Insurance Company, and Newport Insurance Company's Joint Motion to Dismiss For Lack of Subject Matter Jurisdiction is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Countrywide Home Loans, Inc.'s Motion to Dismiss for Failure to State a Claim and Joinder in Insurance Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction is **GRANTED.**

It is **FURTHER ORDERED** that Plaintiff is **GRANTED** leave to amend his Complaint to add claims against Defendants Newport, Meritplan, and Countrywide under the single business enterprise theory for detrimental reliance and breach of good faith.

New Orleans, Louisiana this 10th day of December, 2007.

_____
UNITED STATES DISTRICT JUDGE